IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE WILSON and MIMI WILSON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3-12-cv-1063-B |
| | § | |
| SMITH & NEPHEW, INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiffs' Motion for Sanctions [Dkt. No. 29] has been referred to the

undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and an order of reference

from the District Court. *See* Dkt. No. 32. The undersigned issues the following findings

of fact, conclusions of law, and recommendation.

**Procedural History**

Plaintiffs Willie and Mimi Wilson have filed a motion for sanctions against

Defendant Smith & Nephew, Inc. pursuant to Fed. R. Civ. P. 16(f) for Smith &

Nephew's failure to have a corporate representative present at a February 5, 2013

court-ordered mediation between the parties, in violation of Judge Boyle's Mediation

Order dated August 3, 2012 [Dkt. No. 17]. *See* Motion for Sanctions [Dkt. No. 29]. The

Mediation Order required the parties to "be present during the entire mediation

process" and for a party that was not a natural person – such as Defendant – to be

represented by an "executive person (other than in-house counsel) with authority to

negotiate a settlement." Dkt. No. 17.

Defendant filed a response acknowledging that its representative was available for the mediation only by phone but asserting that sanctions are not warranted because Defendant has not acted in bad faith and because Plaintiffs cannot demonstrate prejudice. *See* Dkt. No. 30. Plaintiffs filed a reply, *see* Dkt. No. 36, and Defendant filed a supplemental response, *see* Dkt. No. 41. The undersigned held a telephonic hearing on the motion for sanctions on March 5, 2013.[1]

On March 15, 2013, the undersigned ordered Plaintiffs to provide evidentiary support as to whether their counsel's requested rates were reasonable by filing supporting materials. *See* Dkt. No. 49. Plaintiffs filed a Notice of Filing of Supplemental Evidence in Support of Motion for Sanctions, *see* Dkt. No. 52, and Defendant filed a Response and Objection thereto, *see* Dkt. No. 53. Defendant also filed a Motion for Leave to File Counter-Evidence in Support of Defendant's Objections. *See* Dkt. No. 54. Defendant's Motion for Leave [Dkt. No. 54] is GRANTED, and the undersigned fully considered Defendant's counter-evidence in making these findings, conclusions, and recommendation.

On April 1, 2013, Defendant filed a motion for a telephonic hearing in order to "clarify its position regarding the factual background of Defendant's corporate representative's participation at mediation via telephone rather than in person." *See*

---

[1] The undersigned permitted the parties to appear by phone based on counsels' representations during a February 22, 2013 telephonic hearing that neither side intended to present testimony or additional evidence in support of or in opposition to this motion. *See* Dkt. No. 38.

-2-

Dkt. No. 57. Plaintiffs opposed the motion, *see* Dkt. No. 59, and Defendant filed a reply

that sought, as an alternative to the request for another hearing, leave to file an

affidavit setting forth the argument that Defense counsel intended to make at any

second hearing on the motions for sanctions, *see* Dkt. No. 63. In an order entered

concurrently with these findings, the undersigned denied Defendant's request for a

second hearing but granted Defendant's motion for leave to file an affidavit and

deemed the affidavit to be filed. The undersigned has considered the affidavit in

making these findings, conclusions, and recommendation. The undersigned notes that

the affidavit, a sworn statement, is of greater evidentiary value than any unsworn

assertions that would be made by counsel at a telephonic hearing, as requested.

Because Defendant violated a court order and that violation was not

substantially justified or in good faith, the undersigned recommends that sanctions are

appropriate under Fed. R. Civ. P. 16(f).

### Background

On June 29, 2012, Judge Boyle entered a scheduling order that, among other

things, required the parties to file a Joint Report informing the Court of their choice

of an agreed-upon mediator by August 3, 2012. *See* Dkt. No. 14, ¶ 6. On August 2, 2012,

Defendant's counsel contacted David Seidler, informing him that he had been

recommended as a mediator and asking him to confirm that he would allow the client

to participate in a mediation via phone. *See* Dkt. No. 30-1. Mr. Seidler's assistant

confirmed with Defendant's counsel later that day via email that "if the client is unable

to attend the mediation ... he would allow the client to participate via phone."

Plaintiffs' counsel was not copied on the email correspondence with Mr. Seidler's office.

The following day, the parties filed a joint status report naming Mr. Seidler as the agreed-upon mediator. *See* Dkt. No. 16.

Judge Boyle then entered a Mediation Order, which provided that

> [t]he named parties shall be present during the entire mediation process and each party which is not a natural person must be represented by an executive officer (other than in-house counsel) with authority to negotiate a settlement (the authority required shall be active, *i.e.*, not merely the authority to observe the mediation proceedings but the authority to negotiate, demand or offer, and bind the party represented).

Dkt. No. 17 at 1. The Mediation Order further advised that "[f]ailure to comply in good faith with the requirements of this order may result in the imposition of sanctions. *See* Fed. R. Civ. P. 16(f)." *Id.* at 2.

The parties agreed to mediate the case on February 5, 2013. Mr. Seidler sent a letter to counsel for both parties on January 10, 2013 in anticipation of the upcoming mediation. Among other things, the letter stated:

> I look forward to seeing all of you at **9:30 a.m. on Tuesday, February 5, 2013**, and I know each of you will bring your client(s) with you and/or a person with full authority to negotiate and settle this matter. If that is virtually impossible, your client or a person with full authority to negotiate and confirm a settlement must be on immediate and constant telephone stand-by for discussions with you and perhaps with me.

Dkt. No. 30-2 at 2.

At the start of the February 5, 2013 mediation, Defendant's counsel informed Plaintiffs' counsel that the Smith & Nephew representative would be available via

phone for as long as the mediation lasted. *See* Dkt. No. 41-2, ¶ 3. The parties then proceeded with the mediation, with Cary Glassner, the Smith & Nephew representative, receiving updates from Defendant's counsel by phone. *See* Dkt. No. 30-3, ¶¶ 4-5. At the March 5, 2013 telephonic hearing, Defendant's counsel stated that he did not know Ms. Glassner's title but that she was in-house counsel. *See* Dkt. No. 51 at 5:15-18. It appears that Ms. Glassner had settlement authority only for a pre-determined settlement amount. *See* Dkt. No. 30-3, ¶ 8.

Plaintiffs' counsel and Defendant's counsel have expressed mixed views regarding the productiveness of the mediation; the mediation lasted until 6:30 p.m., and ultimately the parties were not able to settle the case. *See* Dkt. No. 51 at 7:4-13; 14:19-21.

While Defendant's counsel has asserted that Plaintiffs were aware that one condition of Defendant's selection of a mediator was that the mediator allow Defendant's representative to participate telephonically, there is no dispute that Plaintiffs learned only at the start of the mediation that the representative was actually participating telephonically. *See id.* at 9:9-12; 13:22-25; 21:19-23.

At the telephonic hearing, Defendant's counsel indicated that, as early as August 2, 2012, Defendant's representative had planned to appear at the mediation telephonically. *See id.* at 20:23-24. Upon questioning by the undersigned, Defendant's counsel indicated that the reason that it was important for Defendant's representative to be able to appear telephonically was based on "prior experiences" with Plaintiffs'

counsel. *Id.* at 8:19-20. Defendant's counsel did not elaborate further, nor was Defendant's counsel able to explain specifically why Ms. Glassner or another representative was unable to be physically present at the February 5, 2013 mediation. *See id.* at 20:23-21:4. In an affidavit filed after the telephonic hearing, Mr. Johnson explained that "Smith & Nephew participated in mediation via telephone based upon the understanding that defense counsel's prior agreement with the mediator permitted telephonic participation." Dkt. No. 63-1, ¶ 4.

It is undisputed that between August 3, 2012 and February 5, 2013, Defendant's counsel never sought permission from Judge Boyle to have Defendant's representative appear telephonically, although it appears that Defendant never intended to have an executive officer physically present. Defendant's counsel explained at the hearing that the failure to inform the Court was an "oversight." Dkt. No. 51 at 5:19-24; Dkt. No. 63-1, ¶ 6.

## Legal Standards

Fed. R. Civ. P. 16(f)(1)(C) provides that, "[o]n motion or on its own, the court may issue any just orders ... if a party or its attorney ... fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(2) further directs that, "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

In deciding whether a sanction is merited, the Court need not find that the party acted willfully, intentionally, or in bad faith. *See Lucas Automotive Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001); *Martin Fam. Trust v. Heco/Nostalgia Enters. Co.*, 186 F.R.D. 601, 604 (E.D. Cal. 1999) (collecting cases); 6A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1531 (3d ed. 2012). The fact that a pretrial order was violated is sufficient to allow some sanction, as Rule 16(f)'s text itself makes this clear. *See id.* Rule 16(f) also does not require a showing of prejudice to justify sanctions. *See John v. Louisiana*, 899 F.2d 1441, 1448 (5th Cir. 1990).

Courts recognize the importance to the settlement process of having a executive officer with actual settlement authority physically present at the mediation and craft their mediation orders accordingly. When a party violates a mediation order by failing to have an appropriate representative at the mediation, sanctions are appropriate. *See, e.g., Scaife v. Assoc. Air Ctr., Inc.*, 100 F.3d 406, 411 (5th Cir. 1996) (sanctioning plaintiff for failing to appear at a court-ordered mediation); *Nick v. Morgan's Foods, Inc.*, 99 F. Supp. 2d 1056 (E.D. Mo. 2000) (sanctioning defendant for failing to have a representative with authority to settle attend settlement conference); *Dvorak v. Shibata*, 123 F.R.D. 608, 610-11 (D. Neb. 1988) (same). The *Nick* Court's explanation is particularly instructive:

> Meaningful negotiations cannot occur if the only person with authority to actually change their mind and negotiate is not present. <u>Availability by telephone is insufficient </u>because the absent decision-maker does not have the full benefit of the ADR proceedings, the opposing party's

arguments, and the neutral's input. The absent decision-maker needs to be present and hear first hand the good facts and the bad facts about their case. Instead, the absent decision-maker learns only what his or her attorney chooses to relate over the phone.... Confronted with distractions and inadequate time to evaluate the new information meaningfully, the absent decision-maker's easiest decision is to summarily reject any offer and get back to the business on her desk. Even a conscientious decision-maker cannot absorb the full impact of the ADR conference when they are not present for the discussion. The absent decision-maker cannot participate in good faith in the ADR conference without being present for the conference.

99 F. Supp. 2d at 1062-63 (emphasis added).

## Analysis

The facts in this case demonstrate a premeditated effort by Defendant to avoid having a representative physically present at the mediation. Defendant chose a mediator with that purpose in mind six months prior to the mediation, *see* Dkt. No. 30-1, and never sought the Court's permission to deviate from the Mediation Order. Defendant's counsel has been unable to offer a cogent explanation for why Defendant sought from the outset to avoid having Ms. Glassner physically absent from the mediation. Moreover, according to Defendant's counsel, Ms. Glassner works with in-house counsel and is thus not an appropriate representative under the Court's Mediation Order. Defense counsel's statements further indicate that Ms. Glassner did not have actual settlement authority but was only authorized to approve a predetermined amount. *See* Dkt. No. 30-3, ¶ 8.

Mr. Johnson's affidavit [Dkt. No. 63-1], explaining that Defendant understood that its agreement with the mediator permitted telephonic participation, is unavailing

-8-

for a number of reasons. First, an agreement with a mediator made prior to a court order does not relieve Defendant of the requirements of that order. Second, the record indicates that Defendant never clearly conveyed its intention to appear telephonically to Plaintiffs. Third, even the agreement from the mediator that Defendant references dictates that the client may only participate by phone if she is "unable to attend the mediation." Dkt. No. 30-1. And a subsequent letter from the mediator explained that telephonic participation was permissible only where the client's presence was "virtually impossible." Dkt. No. 30-2.

Defendant's premeditation in seeking to avoid having a representative physically present, its failure to seek the Court's permission over a six-month period to have a representative appear telephonically, its failure to expressly notify Plaintiffs of its intention to have a representative appear telephonically, and the fact that even the representative who was present by telephone apparently was not, as required by the Mediation Order, an executive officer (other than in-house counsel) evidence something less than good faith. Defendant's failure to have an executive officer with settlement authority physically present at the mediation violated the Mediation Order and undermined the settlement process. *See Nick*, 99 F. Supp. 2d at 1062-63.

Defendant insists that its failure to have an executive officer physically present was an "oversight" and relies on *Hijeck v. Menlo Logistics, Inc.*, No. 3:07-cv-0530, 2007 WL 4322591, at * 1 (N.D. Tex. 2007), in which the court declined to sanction a party for similar conduct where there was no evidence of bad faith. *Hijeck* is distinguishable

from the instant case for two distinct reasons. First, in *Hijeck*, the plaintiff sought

sanctions under the court's inherent powers, for which there is a much higher standard

than Rule 16(f). Second, in *Hijeck*, the corporate representative was physically present

– the issue was that she was not an executive officer. In this case, not only was the

corporate representative apparently not an executive officer, she also was not

physically present for the mediation.

The undersigned finds it irrelevant whether, as Defendant's counsel's affidavit

asserts, *see* Dkt. No. 63-1, Defendant would have had an appropriate representative

present in person at the mediation but for Defendant's counsel's "oversight" in failing

to properly advise Defendant or to seek clarification or leave from the Court regarding

the Mediation Order's requirements. The evidence demonstrates that, from the point

of selecting a mediator, Defendant was determined to have its representative

participate only by phone. Had Defendant's counsel sought leave from the Court to

have an in-house counsel participate telephonically, and had the Court denied that

request, Defendant's failure to comply with that subsequent order of the Court may

well constitute a blatant bad faith violation. But the possibility of an even more

egregious violation of a court order – and counsel's assurances that Defendant would

not have committed such a violation – do not make the violation of the Court's order

that Defendant actually committed immune from sanctions under Rule 16(f). And

Defendant cannot avoid responsibility by having its counsel, at the last moment, accept

all the blame for Defendant's violation of the Court's order. *See Pioneer Inv. Servs. Co.*

*v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993) (holding that a client is held responsible for the acts of his counsel); *Namer v. Broadcasting Bd. of Governors*, Civ. A. No. 12–00014, 2012 WL 3597081, at *2 (E.D. La. Aug. 20, 2012) ("While the Court notes that Plaintiff's counsel accepts fault for Plaintiff's failure to effect timely service [], the client is responsible for choosing his lawyer and cannot claim inadequacies as an excuse for failing to meet deadlines and duties imposed by law." (citation omitted)).

Finally, regardless of whether the outcome of the mediation would have been any different had Defendant complied with the Mediation Order, no prejudice is required for sanctions under Rule 16(f). *See John*, 899 F.2d at 1448. And, contrary to Defendant's protestations in response to Plaintiffs' Motion for Sanctions, the undersigned is not recommending that Plaintiffs' Motion for Sanctions be granted because the case did not settle at mediation. Rather, the undersigned determines based on all the circumstances presented here that, because Defendant failed to comply with the requirements of the Mediation Order, Rule 16(f)(1)(C) sanctions are appropriate.

Plaintiffs request sanctions in the amount of $13,600.00, which include the $1,600.00 mediation fee, $7,250.00 for Charles R. Houssiere, III's time for preparation and attending the mediation (14.5 hours at a rate of $500.00 per hour), and $4,750.00 for Randal A. Kauffman's time for preparation and attending the mediation (18.5 hours at a rate of $250.00 per hour). However, Mr. Kauffman is not admitted to the Northern District of Texas. *See* Dkt. No. 53-2.

-11-

At the telephonic hearing, both Plaintiffs and Defendant expressed a view that another mediation could be helpful. *See* Dkt. No. 51 at 11:7-12; 13:3-4. The undersigned notes that Judge Boyle has extended the deadline for the parties to mediate to July 5, 2013. *See* Dkt. Nos. 44-1 & 45. In view of the fact that the parties believe a second mediation could be helpful, the undersigned recommends that the Court order the parties to a second mediation in full compliance with the terms of the Mediation Order.

The undersigned further recommends that Defendant be sanctioned in the amount of the $1,600.00 mediation fee for the February 5, 2013 mediation as well as $2,925.00 representing Mr. Houssiere's time spent attending the mediation (9 hours).

The undersigned notes that Mr. Houssiere requested a rate of $500.00 per hour, which he averred is his customary hourly rate. *See* Dkt. No. 52-3, ¶ 3. However, that rate is higher than the median hourly rates across all categories provided in the 2011 Hourly Fact Sheet, which Plaintiffs attached as Exhibit B to their Notice of Filing of Supplemental Evidence in Support of Motion for Sanctions. *See* Dkt. No. 52-2. In addition, none of the cases cited by Plaintiffs in Mr. Kauffman and Mr. Houssiere's supplemental affidavits [Dkt. Nos. 52-1 & 52-3, respectively] support Mr. Houssiere's requested rate of $500.00 under the circumstances of this case. Indeed, Mr. Houssiere's supplemental affidavit supplies $284/hour – the median hourly rate for attorneys with over 25 years of experience in the Dallas-Fort Worth-Arlington M.A. – as the highest rate to which Mr. Houssiere would be entitled, based on prevailing community standards. In addition, Defendant's counsel suggests in his affidavit that his own

hourly rate of $325/hour is a "reasonable and customary rate" for an attorney of his experience. Dkt. No. 53-1, ¶ 5. Considering the evidence presented by both parties, the undersigned determines that a reasonable rate for Mr. Houssiere is $325/hour. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328-29 (5th Cir. 1995). Mr. Houssiere is therefore entitled to $2,925.00 for the nine hours during which he attended the mediation, at a reasonable rate of $325.00/hour.

The undersigned disagrees with Defendant's argument that Plaintiffs are not entitled to fees related to counsel's attendance at the mediation. *See* Dkt. No. 53 at 5. As Plaintiffs stated at the hearing, they were under a court order to participate in the mediation. *See* Dkt. No. 51 at 9:19-24. Moreover, it was not unreasonable for Plaintiffs to continue with the mediation despite the absence of Defendant's representative.

Because Mr. Kauffman is not admitted to the Northern District of Texas and appearing in this case out of compliance with Local Civil Rule 83.9, no fees need be awarded for Mr. Kauffman's attendance. And the undersigned agrees with Defendant that Mr. Kauffman's time attending the mediation could be considered duplicative of Mr. Houssiere's time. *See* Dkt. No. 53 at 5.

Further, the undersigned finds that no preparation time need be awarded for either Mr. Houssiere or Mr. Kauffman, as, pursuant to the undersigned's recommendation that the Court order a second mediation, Plaintiffs will have an opportunity to apply their preparation towards the second mediation.

**Recommendation**

The Court should grant Plaintiffs' Motion for Sanctions [Dkt. No. 29] and award Plaintiffs fees and costs in the amount of $4,525.00, on the condition that the parties complete a second mediation in full compliance with the Court's Mediation Order.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 10, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE